IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **GREGORY LAMONT WOOTEN,** | § | |
| Petitioner | § | |
| | § | |
| VS. | § | C.A. NO. C-06-563 |
| | § | |
| **WARDEN DAN JOSLIN,** | § | |
| Respondent | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is in the custody of the federal Bureau of Prisons ("BOP") and currently is incarcerated at the Federal Corrections Institution in Beaumont, Texas. Proceeding *pro se*, petitioner filed this habeas corpus petition pursuant to 28 U.S.C. § 2241 on November 6, 2006, arguing that (1) the BOP is wrongfully denying him the right to participate in a residential drug treatment program and (2) the BOP is violating the Administrative Procedures Act. On February 16, 2007 petitioner filed a document which was construed as a supplemental motion in which he argued that (1) the BOP violated his due process rights by refusing to allow him to appeal the results of a disciplinary hearing and (2) there was insufficient evidence at the hearing on which to base a finding of guilt (D.E. 12). On April 30, 2007 respondent filed a motion to dismiss petitioner's claims, to which petitioner responded on May 16, 2007 (D.E. 17, 21).

## **BACKGROUND**

Petitioner was charged by information with one count of possession with intent to distribute cocaine base on March 7, 1995 (D.E. 16-2). On August 17, 1995, following a guilty plea, petitioner was convicted and sentenced to serve 188 months in the custody of the BOP, followed by a five-year term of supervised release (Id.). He is not challenging his conviction or sentence. Rather, he is challenging his exclusion from a residential drug treatment program and also is challenging the loss of 21 days of good time following a finding of guilt in a disciplinary hearing.

Regarding the residential drug treatment program, petitioner argues that he should be allowed to enroll because he has a history of drug abuse and he was addicted to cocaine prior to his incarceration. Respondent counters that petitioner was not admitted to the drug treatment program because he did not offer sufficient documentation of substance abuse to justify his enrollment in the program.

Regarding the disciplinary charges, petitioner argues that his due process rights were violated when he was not allowed to appeal the findings of the disciplinary hearing officer ("DHO") because his appeal was characterized as late even though he submitted it in a timely manner. Petitioner also argues that the testimony of the charging officer was uncorroborated and that his testimony was insufficient evidence on which to base a finding of guilt. Respondent asserts that the record contains no evidence of petitioner's administrative appeal, but respondent does not move to dismiss his claim for failure to

exhaust his administrative remedies.  Rather, respondent argues that petitioner received all the process he was due in the disciplinary hearing.

## APPLICABLE LAW

### A.  Drug Rehabilitation Program

In discussing placement of prisoners within the BOP, 18 U.S.C. § 3621(b) states that "[t]he Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." In discussing the implementation of the requirement to provide substance abuse treatment, the statute sets forth goals for providing treatment to eligible prisoners.  18 U.S.C. § 3621(e)(1).  The term "eligible prisoner" means a prisoner who is determined by the BOP to have a substance abuse problem and is willing to participate in a residential substance abuse treatment program.  18 U.S.C. § 3621(e)(5)(B).  The BOP has created incentive programs to encourage prisoners to participate in drug treatment programs, including the reduction of a prisoner's sentence by one year for those convicted of nonviolent offenses.  18 U.S.C. § 3621(e)(2)(b).

Regulations specify that an inmate must have a verifiable documented drug abuse problem and must not have a serious mental impairment which would interfere with or preclude participation in the program.  28 C.F.R. § 550.56.  The BOP has issued a program statement setting forth the method by which it is determined whether an inmate has a verifiable documented drug abuse problem:

>(1) The inmate must have a verifiable documented drug abuse problem.  Drug abuse program staff shall determine if the inmate has a substance abuse disorder by first conducting the <u>Residential Drug Abuse Program Eligibility Interview</u> followed by a review of all pertinent documents in the inmate's central file to corroborate self-reported information.  The inmate must meet the diagnostic criteria for substance abuse or dependence indicated in the <u>Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, (DSV-IV)</u>.  This diagnostic impression must be reviewed and signed by a drug abuse treatment program coordinator.
>
>Additionally, there must be verification in the Presentence Investigation (PSI) report or other similar documents in the central file which supports the diagnosis.  Any written documentation in the inmate's central file which indicates that the inmate <u>used</u> the <u>same substance</u>, for which a diagnosis of abuse or dependence was made via the interview, shall be accepted as verification of a drug abuse problem.
>
>When a positive urinalysis in the institution is the only documentation of substance use, the inmate shall be referred to drug education or non-residential treatment.  While in drug education and/or non-residential drug abuse treatment services, the inmate shall be further observed and examined regarding his/her substance abuse problem.  If counseling indicates the need for more intensive treatment, the inmate may subsequently be referred to a residential drug program.
>P.S. 533.10, CN-01, May 17, 1996, Ch. 5, P. 4.  (D.E. 16-2, pp. 709).

Based on these criteria, the BOP refused to allow petitioner to participate in the program because he did not have a documented history of substance abuse.  In the PSI prepared at the time petitioner was sentenced, he reported that he began using marijuana and cocaine in 1986 and had experimented with other illicit drugs over the years, although cocaine was his drug of choice.  Petitioner claimed that he had not used any illicit drugs within the previous few years (Notice of Residential Drug Abuse Program Qualification, D.E. 16-2, p. 12; PSI, D.E. 16-2, p. 13).  Also, when petitioner was screened by a psychologist at the Federal Correctional Institution at La Tuna, he did not report a history of substance abuse (Decl. of Amy Fenchel, D.E. 16-2, pp. 5-6;

Psychology Services Intake Form, D.E. 16-2, p. 11). It is clear that based on the information in his record, petitioner was not entitled to enroll in the residential drug treatment program.

Petitioner points out that he has twice been sanctioned for possessing or using intoxicants and argues that this is evidence that he has a substance abuse problem. In both cases petitioner was sanctioned for making homemade alcohol (D.E. 14, pp. 19-20). However, in neither case was there any evidence that petitioner was drinking the alcohol (Id.). Without more, the disciplinary cases are insufficient to show that petitioner has a substance abuse problem.

Petitioner also argues that the BOP violated the Administrative Procedures Act when it enacted the rules relating to qualifying for the drug abuse treatment program because it did not notify Congress when it enacted the rules. However, BOP program statements are internal agency guidelines, rather than published regulations subject to the rigors of the Administrative Procedure Act such as public notice and comment. Reno v. Koray, 515 U.S. 50, 61, 115 S.Ct. 2021, 2027, 132 L.Ed.2d 46 (1995). Because the BOP had no obligation to notify Congress before enacting the rules, petitioner's argument is unavailing.

Interpretations of statutes such as those contained in policy statements, agency manuals and enforcement guidelines lack the force of law and are not entitled to deference under Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Christensen v. Harris County, 529 U.S.

576, 586-587, 120 S.Ct. 1655, 1662, 146 L.Ed.2d 621 (2000).  Rather, interpretations contained in such formats are entitled to respect to the extent that they have the power to persuade.  Id., 529 U.S. at 587, 120 S.Ct. at 1663.  The program statement promulgated by the BOP setting up the criteria to determine whether a prisoner has a verifiable documented drug abuse problem is persuasive in that it appears to a fair and objective way of making the determination.  The prisoner is interviewed by the BOP and pertinent documents in his file are reviewed to corroborate his statements.  In addition, verification of the problem in the PSI provides a more complete assessment of the petitioner's substance abuse problems over time.

Without the requirement of verification from the file, all a prisoner would have to do to qualify for the program would be to declare that he has a substance abuse problem.  Given the incentive of having a sentence reduced by up to one year, every incarcerated person in the BOP would be tempted to declare himself to have a drug problem even if it were not true.  The verification requirements in the BOP program statement help screen out prisoners who do not need the help and preserve the prison resources for those who do need the help.  See also Dellarcirprete v. Gutierrez, 479 F.Supp. 600, 605 (N.D. W.Va. 2007)(BOP guidelines for residential drug abuse treatment program are persuasive and reasonable); Batiste v. Menifee, No. CIVA 06-0657, 2006 WL 2078186 (W.D. La., June 16, 2006)(discretion of BOP in determining eligibility for treatment is virtually unlimited); Calhoun v. Warden, F.C.I. Texarkana, No. 5:05CV198, 2006 WL 887677

(E.D. Tex., April 4, 2006)(denial of admission to treatment program when PSI did not support self-reported drug problem is not abuse of BOP discretion).

Petitioner has failed to show that the BOP's refusal to allow him to participate in the drug treatment program violates his constitutional rights in any way. Accordingly, he cannot show that he is entitled to habeas corpus relief.

**B. Loss of Good Time**

Petitioner also complains about the loss of 21 days of good time following a finding of guilt in a disciplinary hearing. He claims that his right to due process was violated because his administrative appeal was denied as untimely and also because the only evidence in the case was the uncorroborated testimony of the charging officer.

In the incident report the charging officer stated that he was conducting a cell search on December 28, 2005 when he found an Igloo water jug in petitioner's cell which contained a liquid that smelled of homemade alcohol. The officer tested the liquid with an "Alco-Sensor III" and it tested positive for alcohol. The charging officer administered a breathalyzer test to petitioner and he tested negative. Petitioner conceded that the water jug belonged to him (Incident Report No. 1416727, D.E. 16-2, pp. 17-18). Petitioner defended himself against the charge of making, possessing or using intoxicants by stating that it was his intention to make candy, not wine (Id. at 18-19).

Petitioner was found guilty based on the charging officer's report and the results of the "Alco-Sensor III" test (Id. at 19). Petitioner was punished with the loss of 60 days of visitation and commissary privileges and the loss of 21 days of good time (Id.).

Petitioner received notice of the actions taken by the disciplinary hearing officer on March 3, 2006 (D.E. 12, p. 16).  Petitioner filed an appeal, which was received by the South Central Regional Office 12 days later, on March 15, 2006.  Despite the fact that only 12 days had passed, the appeal was rejected as untimely, although the time limit for filing an appeal is 20 days (D.E. 12, p. 15).

Petitioner filed another appeal, which was received by the Central Office on May 8, 2006 (D.E. 12, p. 12).  Petitioner was instructed to submit his appeal to the Regional Office, along with a copy of the rejection notice and a copy of the disciplinary hearing officer's report or staff documentation of the receipt of the report (D.E. 12, p. 11).

Petitioner submitted another appeal which was received in the South Central Regional Office on May 22, 2006.  The appeal once again was rejected as untimely, with the comment that he had received the report from the hearing officer on March 3 and had 20 days from that date in which to appeal (D.E. 12, p. 14).

Petitioner submitted another appeal on December 7, 2006 which was received by the Administrative Remedy Section of the BOP on December 26, 2006 (D.E. 12, p. 10). Petitioner received a response on January 4, 2007, telling him that he needed to provide staff documentation to the region explaining the delay in resubmitting his appeal from March to May (D.E. 12, p. 9).  Petitioner filed his motion to restore good time in this court on February 16, 2007 (D.E. 12).

Respondent claims that the record contains no evidence of an administrative appeal from the sanction imposed by the disciplinary hearing officer,[1] but nevertheless does not assert that petitioner has failed to exhaust his administrative remedies. Respondent argues that petitioner received all the process which he was due.

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States. In <u>Sandin v. Conner</u>, 515 U.S. 472, 483-484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), the U.S. Supreme Court described the limited instances in which prison inmates can make out a claim that a liberty interest has been taken without due process.

> The time has come to return to the due process principles we believe were correctly established and applied in [<u>Wolff v. McDonnell</u>, 418 U.S. 539, 94 S.Ct. 2963 (1974)] and [<u>Meachum v. Fano</u>, 427 U.S. 215, 96 S.Ct. 2532 (1976)]. Following <u>Wolff</u>, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

<u>Id.</u> (internal citations omitted). The Supreme Court held in <u>Sandin</u> that confinement in disciplinary segregation for twenty-three hours and ten minutes per day "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." <u>Sandin</u>, 515 U.S. at 486, 115 S.Ct. at 2301. The Court focused on the

---

[1] It is unclear why respondent claims there is no record of the administrative appeal, given that petitioner attached copies of the records to his pleadings.

nature of the liberty interest at issue, finding that conditions of disciplinary segregation did not differ significantly from conditions in administrative segregation and protective custody.  Id.

Assuming that petitioner has a liberty interest in the 21 days of good time, the loss of good time credits as the result of a disciplinary hearing implicates the higher levels of due process contemplated by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).  The inmate is entitled to the following process: (1) He must receive written notice of the charges;  (2) He must be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals;  (3) There must be a written statement by the fact finder as to the evidence relied on and reasons for the decision.  Wolff, 418 U.S. at 564, 94 S.Ct. at 2979.

Petitioner in this case received advance written notice of the charges (Decl. of Charles Bickle, D.E. 16-2, pp. 15, 17).  Petitioner did not ask to call any witnesses or present documentary evidence (Id. at 15, 18).  He received a written statement by the fact finder setting out the evidence relied upon and the reasons for the decision (Id. at 15-16, 19).  It is clear that petitioner received all the process he was due under Wolff.

Petitioner argues that he was not allowed to administratively appeal the decision because his appeal was deemed untimely even though he filed it on time.  There is no constitutional right to file an administrative appeal of a prison disciplinary case.  Wolff, 418 U.S. at 564, 94 S.Ct. at 2979; Geiger v. Jowers, 404 F.3d 371, 373-374 (5th Cir.

2005).  Moreover, petitioner did not suffer any prejudice from not being allowed to complete the administrative appeal of his case because respondent did not move to dismiss the case for failure to exhaust his remedies.

Petitioner also argues that he should not have been found guilty based on the uncorroborated testimony of the charging officer and also because no one besides the officer was present when the liquid in the cooler was tested for alcohol.  It is not the job of the courts to assess the weight of the evidence when reviewing a prison disciplinary hearing, but only to determine whether the guilty finding has support of some facts or any evidence at all.  Hudson v. Johnson, 242 F.3d 534, 537 (5th Cir. 2001).  In this case the charging officer submitted a report stating that he found the liquid in the cooler and it tested positive for alcohol.  The charging officer also noted that the testing equipment had been calibrated within the month, which indicated that it was working properly, according to the manufacturer's specifications.  The report of the charging officer is some evidence of petitioner's guilt.  Id.

As long as a hearing officer's decision is supported by some evidence and the requirements of Wolff have been met, the decision cannot be disturbed on judicial review.  "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent Mass. Corr. Institution v. Hill, 472 U.S. 445, 455-456, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985); Banuelos v. McFarland, 41 F.3d 232, 234 (5th Cir. 1995).  In this case, the report from the charging officer supports the hearing officer's decision.  Accordingly, petitioner's

argument that the hearing officer's decision was not based on substantial evidence is not supported by the record.

### RECOMMENDATION

Based on the foregoing, it is recommended that respondent's motion to dismiss (D.E. 17) be granted and petitioner's cause of action for habeas corpus relief be dismissed.

Respectfully submitted this 12th day of June, 2007.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Services Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).